UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL M.,

                Plaintiff,

   v.                                              5:23-CV-752
                                                      (DNH/DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**APPEARANCES:**                               **OF COUNSEL:**

HILLER COMERFORD INJURY        JUSTIN M. GOLDSTEIN, ESQ.
& DISABILITY LAW
*Attorney for Plaintiff*
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.       SHANNON FISHEL, ESQ.
OFFICE OF THE GENERAL COUNSEL
*Attorney for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(e).

No. 1. Currently before the Court are Plaintiff's and Defendant's respective Motions for Judgment on the Pleadings. Dkt. Nos. 11, 15, & 16. For the reasons below, it is recommended that Plaintiff's Motion be denied and Defendant's Motion be granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born in 1975, reported that he completed the eighth grade, and has past work experience as an assembler and in maintenance. Dkt. No. 8, Admin. Tr. ("Tr.") at pp. 230, 235. Plaintiff alleges disability stemming from a learning disability and anxiety disorder. Tr. at p. 234. In January 2020, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of October 5, 2018. Tr. at pp. 211-221. Plaintiff's applications were initially denied on November 25, 2020 and upon reconsideration on June 30, 2021, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 105-119, 126-127. Plaintiff subsequently appeared and testified at a hearing before ALJ Jeremy Eldred on February 11, 2022. Tr. at pp. 27-46. On March 4, 2022, ALJ Eldred issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 12-22. The Appeals Council later denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-3.

### B. The ALJ's Decision

In his decision, the ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2023. Tr. at p. 14.

Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. at p. 15. Third, the ALJ determined that Plaintiff had the following severe impairments: obesity, major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, and alcohol use disorder (in remission). Tr. at p. 15. Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Tr. at pp. 15-17. Fifth, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> he can climb or stoop no more than occasionally; can understand, remember, and carry out simple and routine instructions; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves simple and routine tasks.

Tr. at p. 17.

Next, the ALJ found that Plaintiff was a "younger individual" on the alleged disability onset date, had a limited education, and job skill transferability was immaterial because Plaintiff's past relevant work was unskilled. Tr. at p. 21. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform several jobs existing in "significant numbers in the national economy," including mail clerk, cleaner, and assembler. Tr. at pp. 21-22. Finally, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. Tr. at p. 22.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The five-step process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

Plaintiff alleges the ALJ erred in his evaluation of medical evidence and that the RFC finding is not supported by substantial evidence. *See generally* Dkt. No. 11, Pl.'s Mem. of Law. In response, Defendant asserts that the ALJ properly evaluated the record and that the analysis and ultimate decision were both supported by substantial evidence. Dkt. No. 15, Def.'s Mem. of Law at pp. 4-19.

### A. Consistency Factor

An ALJ need not "reconcile explicitly every conflicting shred of medical testimony." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983). However, when evaluating medical evidence an ALJ must consider, among other factors, "the consistency of the opinion with the remaining medical evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) (internal quotation marks omitted). Specifically, to assess consistency, the ALJ must conduct "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021); *see also Jennifer G. v. Comm'r of Soc. Sec.*, 2023 WL 8435991, at *9 (N.D.N.Y. Sept. 6, 2023) (remanding where the ALJ failed to "meaningfully discuss" the consistency of the medical opinions).

Here, Plaintiff asserts that ALJ Eldred did not properly assess consistency for the medical opinion of Nurse Practitioner Sue Jackson. Pl.'s Mem. of Law at pp. 11-22. The Court disagrees. In discussing Nurse Jackson's opinion, ALJ Eldred explicitly stated that her opinion was "inconsistent with the record as a whole, including the benign longitudinal mental status examination findings referenced above, and the lack of any medically determinable back impairment." Tr. at p. 21. The ALJ specifically referenced the medical evidence that Nurse Jackson's diverged from, making his consistency analysis sufficient. *See, e.g., Carter v. Comm'r of Soc. Sec.*, 2023 WL 3997262, at *2 (E.D.N.Y. June 14, 2023) (finding consistency analysis sufficient where ALJ discussed

how the medical opinions "were in tension with the findings of other evidence" despite not explicitly analyzing consistency).

Moreover, remand is not required because "'a searching review of the record' assures [the Court] 'that the substance of the [regulation] was not traversed.'" *Id.* (quoting *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). Certainly, the record reveals that Nurse Jackson imposed extreme limitations on Plaintiff's physical and mental abilities that are inconsistent with other medical opinions. For instance, Nurse Jackson opined that Plaintiff could not carry more than ten pounds and could rarely use his hands. Tr. at p. 667. These findings are wholly inconsistent with Dr. Jenouri's opinion that Plaintiff had only mild range of motion limitations and intact hand dexterity. Tr. at pp. 356-357. Nurse Jackson's findings are also inconsistent with Plaintiff's own statements that he could lift objects and use his hands. Tr. at pp. 261 & 265. Likewise, Nurse Jackson found Plaintiff to be severely limited in his ability to concentrate and perform basic work tasks. Tr. at p. 668. Such severe limitations are inconsistent with Dr. Alexander's opinion that Plaintiff's cognitive functioning was only mildly impaired. Tr. at p. 360-361.

Because the Court's review of the record reveals that Nurse Jackson's opinion is a clear outlier, ALJ Eldred did not err in his consistency analysis. Therefore, the Court does not recommend remand on this ground.

### B. Silence in the Record

Plaintiff also argues that the ALJ "interpreted silences in the record, such as the lack of examination findings and diagnostic imaging, as evidence of lack of functional limitations, and this is an impermissible substitution of the ALJ's lay opinion for that of a medical expert." Pl.'s Mem. of Law at p. 9. This argument should be rejected. It is well-settled that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). However, ALJs cannot "play doctor by using their own lay opinions to fill evidentiary gaps in the record." *Manzella v. Comm'r of Soc. Sec.*, 2021 WL 5910648, at *14 (S.D.N.Y. Oct. 27, 2021) (internal quotation marks and citation omitted). Accordingly, the RFC finding must be backed by medical evidence—not the ALJ's own lay opinion. *See id.*

Here, the "silence" in the record that Plaintiff presumably refers to is the lack of evidence supporting any medically determinable back impairment. Pl.'s Mem. of Law at p. 9; Tr. at pp. 20-21. However, the ALJ did not err in relying on this silence in the record because the RFC finding remains supported by medical evidence and not his mere lay opinion. ALJ Eldred analyzed in depth the medical findings of Drs. Alexander, Vazquez Gonzalez, Stouter, Jenouri, Ochoa, Butler, and Nurse Jackson and discussed how persuasive each opinion was. Tr. at pp. 18-21. Additionally, he discussed how each opinion found to be persuasive supported the RFC finding. Tr. at pp. 18-21. The record does not support Plaintiff's claim that he has a medically determinable back

8

impairment. Two doctors, Dr. Vazquez Gonzalez and Dr. Stouter, both opined that Plaintiff did not suffer from any back disorder. Tr. at pp. 49-102. Similarly, medical records from 2021 showed that Plaintiff had only "mild tenderness to [his] back." Tr. at p. 702. Thus, there is clearly medical evidence to support the ALJ's determination. Accordingly, the ALJ was entitled to rely on the lack of any evidence suggesting Plaintiff had a back impairment. *Dumas v. Schweiker*, 712 F.2d at 1553.

Because the RFC finding remains supported by medical evidence, the Court does not recommend remand on this ground.

### C.  Lack of Substantial Evidence

The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019) (internal quotation marks and citation omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

"In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" *Melia v. Colvin*, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015)

9

(quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). Moreover, an ALJ is not required to discuss every shred of medical evidence in detail. *See, e.g.*, *Cook v. Colvin*, 2015 WL 5155720, *7 (S.D.N.Y. Sept. 2, 2015). Rather, the ALJ need only form a logical bridge between the medical evidence and his decision that permits this Court to glean his rationale. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### 1. *Physical RFC Finding*

Plaintiff first takes issue with the ALJ's physical RFC finding. Pl.'s Mem. of Law at pp. 22-23. Regarding physicality, ALJ Eldred found that Plaintiff could "climb or stoop no more than occasionally." Tr. at p. 17. This finding is supported by substantial evidence.

In formulating the physical RFC finding, ALJ Eldred relied on the medical opinions of Drs. Vazquez Gonzalez and Stouter. Tr. at p. 20. In doing so, he emphasized that both opinions found that Plaintiff had no medically determinable back disorder. Tr. at p. 20. And in finding Dr. Jenouri's medical opinion that Plaintiff did have lower back pain to have "limited persuasive value," ALJ Eldred highlighted that Dr. Jenouri's opinion was "lacking in specificity." Tr. at p. 20. The ALJ also discussed Plaintiff's obesity, finding it to be a key factor in his RFC determination limiting Plaintiff to "light exertion, with minor climbing and stooping limitations." Tr. at p. 20. In so finding, the ALJ stated that the limitations were not inconsistent with medical evidence of record or Plaintiff's activities of daily living which included some physical activity. Tr. at pp. 19-

20. ALJ Eldred concluded that Plaintiff's "obesity does not cause any erosion of his [RFC]." Tr. at p. 20.

Because ALJ Eldred clearly formed a logical bridge between the medical evidence and his decision that permits this Court to glean his rationale, the Court does not recommend remand on this ground.

### 2. *Mental RFC Finding*

Finally, Plaintiff argues that his mental RFC finding is unsupported by substantial evidence—a baseless argument. Pl.'s Mem. of Law at pp. 24-25.

Regarding mental health, the RFC finding stated Plaintiff "can understand, remember, and carry out simple and routine instructions; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves simple and routine tasks." Tr. at p. 17. In formulating the RFC, ALJ Eldred discussed Plaintiff's mental health at length. Tr. at pp. 18-20. First, he discussed that Plaintiff received both mental health treatment and substance abuse services. Tr. at p. 18. The records surrounding that treatment indicated that Plaintiff's mental status was stable. Tr. at pp. 18, 311-312. Next, he discussed Dr. Alexander's medical opinion findings that Plaintiff's attention and concentration were only mildly impaired, his thought process was coherent, and there was "no evidence of limitation to understand, remember, or apply simple directions and instructions." Tr. at pp. 18, 360-361. Based

11

on this opinion, the ALJ limited Plaintiff to "simple, routine work that requires no more than occasional social interaction." Tr. at p. 20. ALJ Eldred even found the opinions of Drs. Ochoa and Butler, who both concluded that Plaintiff had no severe mental impairment, to be "less than fully persuasive" because they were "not fully consistent with Dr. Alexander's mental status examination findings." Tr. at pp. 20, 49-84.

If that were not enough, the ALJ also covered medical evidence showing that Plaintiff "had good eye contact, normal motor activity, a cooperative and appropriate attitude, a normal mood, an appropriate affect, spontaneous speech, clear and appropriate thoughts, intact associative thinking, intact memory, a normal attention span, normal knowledge and vocabulary, intact judgment and insight, and adequate impulse control." Tr. at pp. 18-19, 565. Medical evidence also showed that Plaintiff's psychological symptoms had improved with treatment, and ALJ Eldred discussed those records thoroughly. Tr. at p. 19. Last, Plaintiff's own function report, wherein he stated he could attend to his personal needs, shop, do chores, and engage in leisure activities, was also used to support the RFC finding. Tr. at pp. 19, 256-265, 278-285.

Considering the foregoing, the Court rests assured that substantial evidence supports the mental RFC finding and will not recommend remand on this ground.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 15, 2024
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge